IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED

FEB 1 8 2016

Clerk, U.S. District Court
District Of Montana
Billings

KENNETH DEPUTEE, SR,

              Plaintiff,

vs.

LODGE GRASS PUBLIC SCHOOLS,
DISTRICTS 2 & 27,

              Defendants.

CV 15-82-BLG-SPW


OPINION and ORDER

Plaintiff Kenneth Deputee, Sr. brings this action against his former employer Defendants Lodge Grass Public Schools, Districts 2 & 27 ("School District"). The School District moves to dismiss Deputee's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the School District's motion is granted in part and denied in part.

## I. Background

### A. Factual Background[1]

The School District hired Deputee as an elementary school principal in 1997. Deputee performed well by reaching his annual standards and goals and otherwise meeting his professional duties. At the time, John Small was the School

---

[1] The following facts are taken from Deputee's Amended Complaint and are assumed true for purposes of this motion. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

District's superintendent. With the School District's approval and despite Deputee's distinguished service, Small demoted Deputee from his position as elementary school principal to the position of dean of students in 2011.

In Deputee's place, the School District hired Trivian Rides the Bear as elementary school principal. Rides the Bear is female, about 20 years younger than Deputee, and did not have a valid administrator's license. Deputee had more experience and professional success as both a classroom teacher and an administrator than Rides the Bear. Rides the Bear is also Small's niece and was related to several other members of the School District's board.

From 2011 through 2013, Small subjected Deputee to "harassment and disparate treatment." (Doc. 12 at 3.) Specifically, Small assigned Deputee to a cramped office with insufficient space to perform his job duties effectively and repeatedly shifted him among different classrooms, offices, and facilities. Deputee was also assigned duties outside the dean of student's job description, such as monitoring lunch periods and busing, as well as preparing a Title IX compliance program. Rides the Bear and other administrators were not assigned these duties. Small regularly criticized, threatened, and harassed Deputee. In one specific instance, Small summoned Deputee into his office and verbally attacked him. Small threatened Deputee with termination but did not state a reason why. Small continued these verbal attacks though June 2013. Despite this treatment,

Deputee's evaluations with the School District were uniformly positive and no disciplinary proceeding or investigation was ever initiated against Deputee. Meanwhile, Rides the Bear failed to achieve many of her professional goals in 2012. During all this, Deputee earned substantially less than Rides the Bear.

In 2013, the School District instituted a reduction in force ("RIF") plan to identify which employees would be terminated. In March 2013, Small recommended that the School District not renew Deputee's employment. Small stated that Deputee's non-renewal was needed to reduce salary and overhead. The School District's board held a meeting on May 14, 2013, and Deputee appeared to challenge Small's recommendation. The board members did not give Deputee's arguments any significant consideration and Deputee was "ignored and belittled." (Doc. 12 at 5.) The School District's board approved the RIF plan proposed by Small.

On June 30, 2013, the School District terminated Deputee's employment. Pursuant to the RIF, all terminated employees were to be notified of future job openings. In 2014, Rides the Bear resigned as the elementary school principal, which created the need for a new principal. Deputee never received notification of the job opening. Instead, Small assumed the position of elementary school principal and received a substantial increase in pay.

## B. Procedural History

On December 30, 2013, Deputee filed a charge of discrimination against the School District before both the United States Equal Employment Opportunity Commission ("EEOC") and the Montana Department of Labor, Human Rights Bureau. Specifically, Deputee claimed that the School District terminated his employment due to his gender, age, and lack of familial relationship to Small and the School District's board members. (Doc. 14-2 at 4.)

On May 28, 2015, the EEOC issued Deputee a right-to-sue letter. (Doc. 14-1.) Deputee filed the instant action on August 26, 2015. (Doc. 1.) In his first Complaint, Deputee included both the School District and Small as defendants. (*Id.*) Also, the Complaint's only cause of action was under 42 U.S.C. § 1983. (*Id.* at 6-7.) Small moved to dismiss the Complaint as to the allegations against him. (Doc. 3.) Deputee did not respond, and this Court summarily granted the motion. (Doc. 6.)

The School District also moved for dismissal. (Doc. 7.) Deputee responded by filing an Amended Complaint on December 3, 2015. (Doc. 12.) The Amended Complaint has the same factual allegations as the first Complaint and it contains three causes of action. In Count 1, Deputee asserts a claim under 42 U.S.C. § 1983 and alleges that the School District violated "the right no [*sic*] to be discriminated against, the right to fair and equal treatment in the workplace, including the right to

4

a fundamentally fair process regarding the continuation and resumption of his employment, and the right not to be subjected to harassment and discrimination in the terms and conditions of his employment." (Doc. 12 at 6-7.) In Count 2, Deputee asserts a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (Doc. 12 at 7-8.) In Count 3, Deputee asserts claims under Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Doc. 12 at 8-9.) Specifically, Deputee alleges gender and race discrimination. (*Id.* at 9.) Included in his prayer for relief is a request for punitive damages. (*Id.*)

The School District now moves to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6). The School District provides several arguments in support of its motion. As to Count 1, the School District argues that § 1983 does not provide employees with a separate remedy for gender and age discrimination. The School District also argues that Deputee has not pled sufficient facts to support a procedural due process claim. As to Counts 2 and 3, the School District argues that Deputee's claims of age and gender discrimination are time-barred. The School District also contends that Deputee failed to administratively exhaust his race discrimination claim. Finally, the School District argues that punitive damages are unavailable. The Court will address each argument separately.

## II. Legal Standard

A defendant may move to dismiss a complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). All factual allegations are accepted as true and all reasonable inferences are drawn in favor of the nonmoving party. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013). While a complaint does not need to contain detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. Deputee's Response Brief

As an initial matter, the School District argues that Deputee's response brief should be stricken. The School District posits that because Deputee's response was filed more than 14 days after the motion and opening brief were filed, it was untimely under Local Rule 7.1. The School District misreads the relevant Local Rule. L.R. 7.1(d)(1)(B)(i) states that, with emphasis added by the Court, "Responses to *motions to dismiss*, for judgment on the pleadings, or for summary judgment must be filed within 21 days after the motion was filed." Responses to all other motions are due within 14 days. L.R. 7.1(d)(1)(B)(ii).

The School District's motion to dismiss was filed on December 17, 2015.

Deputee responded on January 7, 2016, which was exactly 21 days after the motion was filed. Accordingly, Deputee timely responded to the motion.

## IV. Count 1

To paraphrase the allegations in Count 1, Deputee claims that the School District violated 42 U.S.C. § 1983 by depriving him of: (1) His right not to be discriminated against and harassed in the workplace; and (2) his right to procedural due process regarding the continuation and resumption of his employment. (Doc. 12 at 6-7.) The School District argues that § 1983 does not provide a separate remedy for the alleged discrimination, as the ADEA and Title VII foreclose separate workplace age and gender discrimination claims. The School District also argues that it could not have violated Deputee's right to due process as it gave him adequate notice and an opportunity to be heard before terminating his employment.

### A. Workplace Discrimination and Harassment

Under § 1983, a defendant acting under the color of law is liable if it deprives a plaintiff of any rights secured by the U.S. Constitution or federal law. 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Liberally construing the Amended Complaint,

7

Deputee alleges that the School District violated his constitutional and statutory rights against age and gender discrimination.[2]  The Fourteenth Amendment sometimes prohibits state actors from discriminating based on gender, *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 723-24 (1982), and age, *Gregory v. Ashcroft*, 501 U.S. 452, 470-71 (1991).  Federal law also prohibits employers from discriminating based on gender in Title VII, 42 U.S.C. § 2000e-2(a), and age in the ADEA, 29 U.S.C. § 623(a).

However, § 1983 cannot be used to vindicate all federally-created rights. Congress may specifically foreclose a remedy under § 1983.  *Blessing v. Freestone*, 520 U.S. 329, 341 (1997).  When a separate statute's remedies are sufficiently comprehensive, "they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."  *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981); *see also Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002) ("[A] comprehensive remedial scheme for the enforcement of a statutory right creates a presumption that Congress intended to foreclose resort to more general remedial schemes to vindicate that right") (internal quotation omitted).

---

[2] While Deputee does not explicitly allege any specific constitutional rights that were violated, the Amended Complaint's first paragraph states that the claims are alternatively brought under the Fourteenth Amendment.  (Doc. 12 at 1.)

The Ninth Circuit held that the ADEA precludes the assertion of employment age discrimination claims under § 1983 in *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051 (9th Cir. 2009). In *Ahlmeyer*, the plaintiff alleged that her employer discriminated due to her age. *Id.* at 1054. The plaintiff brought a claim under § 1983 for age discrimination in violation of the Equal Protection Clause. *Id.* The district court dismissed the § 1983 claim, reasoning that the ADEA provided the exclusive remedy for age discrimination by employers and precludes similar claims brought under § 1983. *Id.*

The Ninth Circuit affirmed and adopted the Fourth Circuit's reasoning in *Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364 (4th Cir. 1989). *Ahlmeyer*, 555 F.3d at 1056. The ADEA has a complex enforcement scheme that a party could bypass by way of a § 1983 action. *Id.* The Ninth Circuit agreed with the Fourth Circuit's conclusion that the ADEA's remedies are "sufficiently comprehensive to demonstrate congressional intent to preclude § 1983 actions in the area of age discrimination in employment." *Id.* Congress intended for the ADEA to serve as the exclusive remedy to pursue employment age discrimination claims. *Id.* at 1058. Therefore, "the ADEA precludes the assertion of age discrimination in employment claims, even those seeking to vindicate constitutional rights, under § 1983." *Id.* at 1057.

Identically to the plaintiff in *Ahlmeyer*, Deputee cannot assert his age

discrimination claim via § 1983. Instead, his exclusive remedy is with the ADEA,

which he pleads as Count 2 in his Amended Complaint.

However, Title VII does not preclude a separate action under § 1983 for

gender discrimination. *Roberts v. Coll. of the Desert*, 870 F.2d 1411, 1415 (9th

Cir. 1988). In *Roberts*, the plaintiff brought separate actions for gender

discrimination under Title VII and § 1983 against her employer. *Id.* at 1414. The

Ninth Circuit upheld judgments on both the Title VII and § 1983 claims and held

that Title VII does not preempt an action under § 1983 for a violation of the

Fourteenth Amendment. *Id.* at 1415.

While Title VII does not preclude a § 1983 claim brought under the

Fourteenth Amendment, a plaintiff cannot use § 1983 as a vehicle to vindicate

statutory rights created by Title VII. *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir.

2012). In other words, "Title VII provides the exclusive remedy for violations of

its own terms and an employment discrimination plaintiff asserting the deprivation

of rights created by Title VII must comply with the Act's procedural requirements

before seeking judicial review." *Id.* at 641. In sum, a party cannot use § 1983 to

remedy a violation of Title VII. *Id.* When the employer's conduct may also

violate rights conferred by an independent source – such as the Fourteenth

Amendment – "Title VII supplements, rather than supplants, existing remedies for employment discrimination." *Id.*

Here, Deputee can proceed with his § 1983 claim of gender discrimination that may allege a violation of the Fourteenth Amendment. Like in *Roberts*, Title VII does not preclude Deputee's separate action under § 1983 for an alleged violation of the constitutional protection against gender discrimination. However, like in *Henley*, Deputee cannot use § 1983's remedies to vindicate any rights conferred by Title VII.

## B. Procedural Due Process

The Fifth Amendment prohibits the deprivation "of life, liberty, or property, without due process of law." "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citation omitted). Due process does not require that an administrative body apply the judicial model. *Dixon v. Love*, 431 U.S. 105, 115 (1977). Rather than being "a technical conception," procedural due process "is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (internal citations omitted).

The School District correctly notes that the essential requirements for due process "are notice and an opportunity to respond." *Cleveland Bd. of Educ. v.*

11

*Loudermill*, 470 U.S. 532, 546 (1985). Due process also requires "a fair tribunal."

*In re Murchison*, 349 U.S. 133, 136 (1955). This requirement applies to both

courts and administrative bodies. *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir.

1995). A plaintiff can establish a procedural due process claim by demonstrating

either actual bias by the adjudicator or that "the adjudicator's pecuniary or personal

interest in the outcome of the proceedings may create an *appearance of partiality*."

*Id.* (emphasis in original).

    The Court finds that Deputee has pled sufficient facts to support his

procedural due process claim. Deputee alleges that despite his satisfactory

performance, the School District demoted him from his principal position and

replaced him with Rides the Bear. (Doc. 12 at 3.) According to Deputee, Rides

the Bear was unqualified for the position, and she was Small's niece and related to

several other members of the School District's board. (*Id.*) Small later

recommended that the School District not renew Deputee's employment. (*Id.* at 5.)

While he was afforded the opportunity to appear at a hearing before the School

District's board, the board may have been composed of Rides the Bear's family

members that Deputee alleges to have previously affirmed his demotion in favor of

Rides the Bear. According to Deputee, he was not afforded any meaningful

opportunity to respond, but instead he was "ignored and belittled." (*Id.*)

Liberally construing the factual allegations and affording Deputee all reasonable inferences, the Court cannot say definitively that the School District acted without either actual or implied bias. The Court finds that the above facts state a plausible claim that the School District did not afford Deputee a fair tribunal.

In summary, the Court concludes that Deputee cannot use § 1983 to assert claims of age discrimination or statutory violations of Title VII. However, Deputee can use § 1983 to assert violations of the Fourteenth Amendment's prohibition on gender discrimination. Deputee can also proceed on his procedural due process claim.

## V. Counts 2 and 3

The School District presents three arguments as to why Counts 2 and 3 should be dismissed. First, the School District argues that Counts 2 and 3 are time-barred since the Amended Complaint was filed more than 90 days after the EEOC issued its right-to-sue letter. Second, the School District contends that all allegations of gender discrimination that occurred in excess of 300 days before the Amended Complaint's filing are time-barred by Title VII. Third, the School District argues that Deputee did not administratively exhaust his racial discrimination claim.

## A. The EEOC Letter

A plaintiff has 90 days to file an action under the ADEA and Title VII after receiving notification that the EEOC will not take further action. 42 U.S.C. § 2000e-5(f)(1). The 90-day period "operates as a limitations period." *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1121 (9th Cir. 2007). If a litigant does not file an action within 90 days, then the action is time barred. *Id.*

The EEOC issued its letter on May 28, 2015. Deputee filed the first Complaint on August 26, 2015, which was within 90 days of the EEOC's letter. However, Deputee's only stated cause of action in the first Complaint was under § 1983. Deputee added claims under the ADEA and Title VII when he filed his Amended Complaint on December 3, 2015. Of course, the Amended Complaint was filed after the 90-day deadline. The School District argues that since the ADEA and Title VII claims were added after the 90-day period, they are time-barred.

The Court disagrees and finds that the Amended Complaint's new claims relate back to the date the original Complaint was filed. Fed. R. Civ. P. 15(c)(1)(B) provides:

> An amendment to a pleading relates back to the date of the original pleading when:
>
>> **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading.

14

"An amended claim arises out of the same conduct, transaction, or occurrence if it will likely be proved by the 'same kind of evidence' offered in support of the original pleading." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (internal quotation omitted). In other words, relation back should be permitted if the amended claims "share a common core of operative facts" with the original claims. *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008). Rule 15(c)'s relation back doctrine is "liberally applied." *ASARCO*, 765 F.3d at 1004.

Deputee's factual allegations in the original Complaint and the Amended Complaint are identical. To support his § 1983 claims, Deputee alleges that the School Board illegally discriminated against him due to his age and gender. In the Amended Complaint, Deputee uses the same allegations to support claims under the ADEA and Title VII. The alleged facts used to support his § 1983 claims and his ADEA and Title VII share a "common core of operative facts." Deputee would use the "same kind of evidence" to prove all of the claims advanced in the Amended Complaint. Accordingly, the new claims in the Amended Complaint relate back to the date of the original Complaint and are not barred by the 90-day deadline.

## B. Title VII's 300-day Period

Under Title VII, a claimant must file a discrimination charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred" if the claimant also files a corresponding charge with a state agency. 42 U.S.C. § 2000e-5(e).[3] On December 30, 2013, Deputee filed charges before both the EEOC and the Montana Human Rights Bureau. The School District concedes that Deputee's termination on June 30, 2013, occurred within the 300-day period. But since Deputee's demotion from principal to dean of students occurred in 2011, the School District argues that Deputee cannot claim Title VII damages for that event. The School District also argues that Deputee cannot include any allegations of harassment and disparate treatment occurring before March 4, 2013 (which is 300 days before December 30, 2013). The Court agrees that Deputee's demotion is time barred, but finds that Deputee can assert allegations related to ongoing harassment and disparate treatment that occurred prior to the 300-day period.

The Supreme Court addressed a similar situation in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In *Morgan*, the plaintiff filed a charge of discrimination and retaliation with both the EEOC and the relevant state agency. *Id.* at 105. The plaintiff alleged that his employer consistently harassed him and

---

[3] If a claimant only files with the EEOC, the charge must be filed within 180 days. 42 U.S.C. § 2000e-5(e).

disciplined him more harshly due to his race. *Id.* Some of the alleged discriminatory acts occurred within the 300-day period immediately preceding the filing, but many took place prior to that time period. *Id.* at 106. Similar to the School District, the employer argued that it could not be held liable for any conduct occurring prior to the 300-day period. *Id.*

The Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Discrete acts include termination, failure to promote, or refusal to hire. *Id.* at 114. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. Even if a discrete act is time barred, it can be used "as background evidence in support of a timely claim." *Id.* Therefore, the employer's discrete discriminatory acts that occurred prior to the 300-day period were not actionable. *Id.* at 114-15.

The Court distinguished hostile work environment claims from discrete discriminatory acts. *Id.* at 115. A hostile work environment claim involves a continuing "unlawful employment practice" that does not just happen on any particular day. *Id.* "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117. In determining whether a plaintiff can maintain a hostile work environment claim under Title VII, courts consider "all the circumstances, including the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 116 (internal quotations omitted).

A hostile work environment claim is timely if any part of the "unlawful employment practice" occurred within the 180 or 300 days prior to the charge's filing. *Id.* at 117. Some of the alleged acts that created a hostile work environment can be considered even if they fall outside the statutory time period. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* Put differently, for a "charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 118. As long as one illegal act that contributed to the hostile work environment occurred within that time period, "the employer may be liable for all acts that are part of this single claim." *Id.*

In *Morgan*, the employer created a hostile work environment by consistently making racial jokes and derogatory comments. *Id.* at 120. Even though many of the acts occurred prior to the 300-day period, they all constituted part of the plaintiff's hostile work environment claim. *Id.* Therefore, the plaintiff could include all of the alleged acts in his claim. *Id.*

18

Similar to *Morgan*, Deputee alleges facts that occurred prior to the 300-day time period. One such instance was his demotion from principal to dean of students in 2011. A demotion is similar to a termination or failure to promote, which the Supreme Court specifically identified as discrete actions. *Morgan*, 536 U.S. at 114. Thus, the Court finds that the 2011 demotion was a discrete act that could have been separately actionable. Since the demotion falls outside of the statutory period, Deputee cannot maintain a Title VII claim for losing his principal position to Rides the Bear. Deputee can use the demotion as background evidence in support of timely Title VII claims, such as his termination. *Id.* at 113.

Also similar to *Morgan*, Deputee alleges that the School District created a hostile work environment in violation of Title VII. Deputee claims that Small subjected him to "harassment and disparate treatment" from 2011 through 2013. (Doc. 12 at 3.) The harassment included repeatedly providing Deputee inadequate work spaces and assigning him administrative tasks that other administrators, including Rides the Bear, were not required to perform. (*Id.* at 3-4.) Deputee also alleges that Small repeatedly harassed and attacked him verbally without reason. (*Id.* at 4.) This harassing behavior allegedly continued until June 2013. (*Id.*)

The Court finds that these alleged facts support a claim of a hostile work environment in violation of Title VII. The latest alleged instance occurred in June 2013, which is within the 300-day period. Since the ongoing harassment, if

proven, could collectively constitute one unlawful employment practice, "[i]t does not matter…that some of the component acts of the hostile work environment fall outside the statutory time period." *Morgan*, 536 U.S. at 117. Deputee can still assert that the hostile work environment originated in 2011. Several instances of the alleged harassment occurred within the statutory time period; therefore, Deputee can rely on instances of continuing harassment and disparate treatment that occurred outside of the 300-period to support a hostile work environment claim under Title VII.

### C. The Race Discrimination Claim

Deputee did not raise a charge of racial discrimination before the EEOC. The School District argues that this claim should be dismissed for failure to exhaust the administrative remedies. Deputee concedes this argument. Accordingly, Deputee's racial discrimination claim in Count 3 should be dismissed.

## VI. Punitive Damages

The School District moves to dismiss Deputee's request for punitive damages. Deputee concedes this argument. Accordingly, Deputee's request for punitive damages should be dismissed.

## VII. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED:

1. The School District's initial Motion to Dismiss Claims Against School District (Doc. 7) is DENIED as moot.

2. The School District's Restated Motion to Dismiss Amended Complaint Against School District (Doc. 13) is GRANTED IN PART as follows:

   a. In Count 1, Deputee cannot pursue a claim of age discrimination.

   b. In Count 1, Deputee cannot use § 1983 to remedy a violation of Title VII.

   c. In Count 3, Deputee cannot pursue a claim for his demotion that occurred in 2011.

   d. In Count 3, Deputee's claim of racial discrimination is dismissed.

   e. Deputee's request for punitive damages is dismissed.

3. In all other aspects, the motion is DENIED.

DATED this 18th day of February, 2016.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge